**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-02278-MJW

KEVIN HARTWELL and
BARARA HARTWELL,

    Plaintiffs,

v.

SOUTHWEST CORRECTIONAL MEDICAL GROUP, PLLC,
DOUGLAS COUNTY,
SHERIFF TONY SPURLOCK, in his individual and official capacity,
CAPTAIN KEVIN DUFFY, in his individual and official capacity,
TIMOTHY G. MOSER, MD, in his individual and official capacity,
KATHRYN DAVIDSON, LPN, in her individual and official capacity,
SOPHIA NIX, LPN, in her individual and official capacity,
DAISHA WADE, LPN, in her individual and official capacity,
STEPHANIE RUSSAK, RN, CHARGE NURSE, in her individual and official capacity,
JESSICA ISAACS, RN, in her individual and official capacity,
DEIMYS VIGIL, RN, in her individual and official capacity,

    Defendant.

## DOUGLAS DEFENDANTS' MOTION TO DISMISS

Defendants Douglas County, Tony Spurlock and Kevin Duffy (collectively, the "County" or "Douglas or County Defendants" or "Defendants"), by and through the Douglas County Attorney, hereby submit this Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for failure to state a claim.

**IN SUPPORT** thereof, the County Defendants state as follows:

## INTRODUCTION

This lawsuit is comprised of claims against the doctors and claims against the County Defendants. This Motion addresses the latter. With respect to the claims against the County

Defendants, there are no specific factual allegations against any of the individual County Defendants; rather, there are vague and conclusory allegations concerning spoliation of evidence. But even accepting these conclusory allegations as true, spoliation only provides certain evidentiary remedies; it is not a violation of a clearly-established Constitutional right. The only other federal claim against the County Defendants is an attempt to impose municipal liability on the County for alleged customs and practice of its third-party medical provider. The allegations, however, are insufficient to show municipal liability.

Plaintiffs also allege a variety of state law claims against the County Defendants, all of which are predicated on the alleged malpractice of the doctors. In the absence of any viable federal claim against the County, the County Defendants ask this Court to not accept pendant jurisdiction over the state law claims. Furthermore, even if the Court were to consider exercising pendent jurisdiction, Plaintiffs' allegations fail to identify acts or omissions by the County Defendants which, if true, would establish liability. Accordingly, Plaintiffs' state law claims against the County Defendants should also be dismissed.

## BACKGROUND

The Complaint makes clear that Mr. Hartwell's medical care was provided by Dr. Moser and nurses within the course and scope of their employment by Southwest Correctional Medical Group ("Southwest"), a private, for-profit corporation. (Compl. ¶¶ 6, 10.) Although the medical attention received by Plaintiff from Southwest is alleged to have been wrought with misdiagnoses and improper medication, the Complaint does make clear that Plaintiff received a tremendous volume of medical attention while in the jail. (Compl. ¶¶ 21-41.)

The County Defendants are not alleged to have treated Mr. Hartwell, nor are they alleged to have interfered with any of the treatment he received. In fact, Mr. Hartwell's most significant

2

complaint against the County (other than their municipal liability argument which will be addressed below) is the alleged spoliation of evidence. In this regard, it is worth noting that Plaintiffs do not allege that all video was destroyed. Indeed, the most salient video—of Mr. Hartwell experiencing what is alleged to be a seizure—was preserved and was reviewed by Plaintiffs long ago.

By way of background, Douglas County jail, like many other jails, has over 400 surveillance cameras that continuously record and, unless preserved, will record over themselves every 30 days. During his twenty days in the jail, Mr. Hartwell would have been on many, but not all, of the cameras for brief periods of time as he moved about within the jail. Although the number of potential cameras could have been narrowed somewhat from the 400, manually searching 20 days of 24/7 video over multiple cameras to see if he popped into one shot or another briefly, would have been unreasonable. Accordingly, rightly or wrongly, jail staff preserved the videos that seemed most relevant, including the footage of the alleged seizure.

The problem that Plaintiffs seek to address is their desire to demonstrate that Mr. Hartwell's eventual removal from the jail to the emergency room was not the result of a single episode on that day, but rather, the result of a gradual deterioration of his medical condition over a period of time, which he alleges he could prove had the video of Mr. Hartwell's day-to-day life been preserved. If this becomes a disputed issue of fact,[1] Plaintiffs will have their opportunity to make their argument for an evidentiary remedy, such as a negative inference jury instruction.

---

[1] It is not clear that this will become a disputed issue of fact, given the documentary evidence referenced in the Complaint. For example, even without the video, the doctors allegedly diagnosed the cause of the seizure to be the lack of Keppra and Diazapam for 20 days. (Compl. ¶ 48.)

3

But there do not appear to be any cases elevating spoliation itself to the status of a Constitutional violation.

## ARGUMENT

The County Defendants seek dismissal of all claims against them. The Complaint alleges ten claims, some against the County Defendants, some not. Section I below will address the federal claims against the County Defendants. Section II will address the state law claims against the County Defendants.

### I.   FEDERAL CLAIMS

Plaintiffs assert five federal claims, but Claim One is not against the County Defendants and Claims Four and Five are requests for attorney's fees and punitive damages. Thus, there are two actual federal claims asserted against the County Defendants; namely, the Second Claim for § 1983 Municipal Liability and the Third Claim for Conspiracy. Notably, no individual County Defendant is alleged to have personally participated in any Fourteenth or Eighth Amendment violation pertaining to the medical treatment received by Plaintiff.

#### A.   Plaintiffs Fail to State a Claim for Municipal Liability

In addition to Douglas County itself, Plaintiffs also name Sheriff Spurlock and Captain Duffy in their official capacity. These three claims are redundant because, in essence, a claim against the individuals in their official capacity is a claim against the entity. *Pietrowksi v. Town of Dibble,* 134 F.3d 1006, 1009 (10th Cir. 1998).

In order to state a claim for municipal liability, a plaintiff must allege the existence of: (1) an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of municipality." *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013) (a plaintiff

4

must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury"). The "official policy or custom" requirement "was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

A plaintiff may allege the existence of a municipal policy or custom in the form of (1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees. *Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010).

Plaintiffs suggest a number of policies that sound pretty bad. But there are no factual allegations to suggest that these various ills are a custom or policy. For example, Plaintiffs allege that "Defendants had a policy or custom of routinely denying detainees, including Mr. Hartwell, access to medical treatment by a qualified medical provider..." (Compl. ¶ 83.) But there are no factual allegations pertaining to any other detainees being routinely denied medical treatment. Even if Plaintiffs could demonstrate that Mr. Hartwell's level of care was unconstitutional, his case, standing alone, would not suffice to prove a custom or policy. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiffs make no factual allegations about other detainees that are "routinely denied medical treatment," which renders the allegation conclusory. Likewise, they do not allege that a

policymaker made a decision to deny detainees medical treatment. The stark allegation, that the Defendants have a custom and practice of denying medical treatment to inmates, "does little more than restate the elements of a deliberate indifference policy claim and provides no basis to attribute causation in any particular incident to persons who did not personally participate." *Carmody v. Ensminger,* 2017WL4150601, *5 (D.Colo. 2017), *citing Smith v. D.C.*, 674 F.Supp.2d 209, 212 (D.D.C. 2009).

Instead of factual allegations of a custom and practice, Plaintiffs rely on an allegation that the contract between Douglas County and Southwest inherently creates a financial disincentive for Southwest to seek outside care for detainees. (Compl. ¶¶ 89-91.) This somewhat novel argument appears to have been borrowed from *McGill v. Correctional Healthcare Cos.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 2922635 (D. Colo. June 27, 2014) ("*McGill I*"). In that case, the court first recognized that the various claims against the county "defendants about their training and supervision of medical personnel …either misconceive the role of the Sheriff (who has no expertise in the practice of medicine or nursing) or are purely conclusory allegations that the Court need not accept." *Id.* at *8. However, the court allowed the argument that Jefferson County had created financial incentives that discourage hospitalization of inmates "to survive dismissal at this stage, just barely." *Id.*

Plaintiffs' reliance on this theory for this case is misplaced for a number of reasons. First, the notion that assigning responsibility for outside medical expenses creates an unconstitutional disincentive did not seem to catch on. *See*, *e.g.*, *Estate of Grubb v. Weld County Sheriff's Office*, No. 16-cv-00714-PAB-STV, 2017 WL 951149, at *3 (D. Colo. Mar. 8, 2017). At some point, a jail and a medical provider must address who pays for the care that the medical provider is unable to provide; leaving it an open question would make no sense. If courts are

willing to accept the cynical notion that people are going to deny necessary medical treatment based on financial disincentive, then that disincentive would exist for one of the parties, whichever way the contract reads.

Secondly, the same division that allowed the claim to "barely" survive dismissal, subsequently dismissed the claim on summary judgment in *McGill v. Correctional Healthcare Companies, Inc.,* No. 13-cv-01080-RBJ-BNB, 2014 WL 5423271, at *2-*4 (D. Colo. Oct. 24, 2014) ("*McGill II*"). Furthermore, when another Plaintiff tried the same argument in the same division, claiming it was "nearly identical," the same division did not let the argument survive a motion to dismiss a second time. *See Estate of Martinez v. Tayler,* 176 F. Supp. 3d 1217, 1231 n.3 (D. Colo. 2016). There is simply no support for the proposition that assigning responsibility for the cost of outside medical treatment demonstrates deliberate indifference.

Third, as was the case in *Martinez*, the allegations in this case are not the same as those in *McGill I*. In *McGill I*, the court relied on allegations that the contractual arrangement also discouraged sanctions for the provision of improper care or hospitalization, which tipped the scale and allowed the claim to "barely survive," at least for the moment in that case. Allegations about the contract alone are insufficient. *Martinez,* 176 F. Supp. 3d at 1231 n3.

Finally, with respect to this specific contract, Plaintiff bases his argument, not on any facts particularized to these cases, but rather, on a speculative opinion of a grand jury in California. The opinion is attached hereto for the Court's convenience. (Attachment 1). In it, a grand jury reviewed an element of the Correctional Healthcare contracts that requires the medical provider to cover all medical needs—in-house if they have the capability, and outside if they do not. The grand jury opined that this arrangement may create a financial disincentive for the medical provider to send inmates to a hospital.

The fact that Correctional Healthcare's contract was challenged in *McGill I,* and that California Forensic Medicine's contract is alleged to have been challenged by a grand jury in California, and that Southwest's contract is being challenged here, indicates that these contracts are fairly ubiquitous in the correctional world. The mere presence of these contracts does not demonstrate a custom and practice of denying healthcare. As the Tenth Circuit has pointed out, jailers are merely "gatekeepers for other medical personnel capable of treating the condition," and may be held liable only if he or she "delays or refuses to fulfill that… role due to deliberate indifference." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005)*; Sealock v. Colorado,* 218 F.3d 1205, 1211 (10th Cir. 2000); *see also McGill I*, 2014 WL 2922635, at *8 (describing the misconception of the Sheriff's role in providing healthcare).

Plaintiffs make a vague reference to training, but this allegation is likewise insufficient because a plaintiff "must show a defendant had actual or constructive knowledge that a *particular omission* in [a training] program caused officials to violate citizens' constitutional rights and nonetheless made a conscious choice to retain the deficient training program." *Carmody, supra,* 2017WL4150601, *5. Plaintiffs make no such allegations.

Plaintiffs do not adequately allege a custom or practice, but even if they did, a plaintiff must also allege a direct causal link to the custom and policy and, as particularly pertinent here, the requisite degree of culpability on the part of the County. *Schneider,* 717 F.3d at 769. "[T]he prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation." *Id.* at 771 n.5. This standard may be satisfied "when the municipality has actual or constructive knowledge that its actions or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.*

Put into the context of this claim, Plaintiffs could potentially demonstrate deliberate indifference if they were to allege and show that the County knew or should have known that the action it is alleged to have taken—contracting with Southwest as its medical provider—was substantially certain to result in the provision of unconstitutionally deficient medical care to its inmates. Plaintiffs make no factual allegations pertaining to the County Defendants' state of mind, and their reference to a small section of a grand jury investigation in another state, of a related corporation, a few months prior to this incident (and months after the County and Southwest agreed to the complained-of cost allocation in their contract), is not sufficient to put the County Defendants "on notice" that continuing with its contract with Southwest was "substantially certain" to result in a constitutional violation. *See Schneider*, 717 F.3d at 771.

### B. Plaintiffs Fail to State a Claim for Conspiracy.

The only personal participation in any Constitutional violation alleged against a County Defendant is the allegation that Captain Duffy and Sheriff Spurlock conspired to deprive Mr. Hartwell of his right to medical treatment by failing to "adequately staff, train and/or supervise the medical staff," contracting with Southwest, and purportedly conspiring to cover up the denial of medical care.

These stark allegations cannot serve as the basis for a conspiracy claim because there are no specific facts alleged that tend to show an agreement or a concerted action. "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants…Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

While Plaintiffs specifically allege inadequacies in medical treatment, they do not allege any communication between Southwest and either Sheriff Spurlock or Captain Duffy, or any

9

communication between Sheriff Spurlock and Captain Duffy, in furtherance of the "conspiracy" to deprive him of adequate medical care. Similarly, they do not allege any actions in furtherance of such a conspiracy. "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000)

As stated, there is no alleged "agreement" to destroy evidence. But even if there was, it would not be a § 1983 violation because there is no legal support for elevating alleged spoliation to the level of Constitutional violation. "Destruction of evidence or spoliation is a discovery offense." *Gates Rubber Co. v. Bando Chem. Indus. Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996). "A court may impose sanctions for the destruction or loss of evidence [if] the adverse party was prejudiced by the destruction of the evidence." *Estate of Vallina v. County of Teller Sheriff's Office*, No. 15-cv-010802-RM-STV, 2017 WL 1154032 (D. Colo Mar. 28, 2017) (citing *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007)). But the possibility of sanctions does not raise spoliation to the level of Constitutional violation.

Furthermore, to the extent this claim applies to Sheriff Spurlock and Captain Duffy in their individual capacities, they are entitled to qualified immunity because there is no violation of a clearly established Constitutional right. In order for a Constitutional right to be clearly-established, there must be an opinion by the U.S. Supreme Court, the Tenth Circuit, or a clear majority of circuits holding that the Constitutional right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullinex v. Luna,* 136 S.Ct. 305, 308 (2015).

Plaintiffs may argue that every reasonable officer would have known not to allow any of the videos to be recorded over, and that may or may not be true. What is clear, however, is that such an argument only comes up in a civil rights context if the purportedly clearly-established right is a Constitutional one, and there is no case holding that preservation of evidence is a Constitutional right. This is not to say that destruction of evidence is without consequences; indeed, the evidentiary remedies can be devastating to the defense of a civil rights claim. But an evidentiary violation itself is not a Constitutional violation, and certainly not a clearly-established one.

## II.   STATE LAW CLAIMS

Because Plaintiffs have failed to state a federal claim against the County Defendants, this Court should not retain jurisdiction over the state law claims. Even so, the state law claims should be dismissed because the allegations of the Complaint fail to identify acts or omissions by the County Defendants—as opposed to Southwest and its employees—that would render them liable under state law.

### A.   Plaintiffs Have Not Stated A Claim Under The Premises Liability Act.

Plaintiffs' Sixth Claim for Relief alleges that Douglas County and Southwest are liable under Colorado's Premises Liability Act, C.R.S. § 13-21-115 ("CPLA"). (Compl. ¶ 112.) While the CPLA does extend to claims arising out of activities conducted on the premises, the Supreme Court has rejected the notion that the PLA extends to every alleged injury that occurs on a landowner's property. Rather, the Supreme Court has held "that the premises liability statute applies to conditions, activities, and circumstances on the property that the landowner is liable for *in its legal capacity as a landowner.*" *Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 559 (Colo. 2013) (emphasis added) (rejecting interpretations offered by both sides, including position

11

"which would read the statute far too broadly, extending its application to any tort that happens to occur on another's property.").[2]  The gravamen of Plaintiffs' Complaint is that Southwest provided negligent medical care to Mr. Hartwell.  Liability for such alleged negligence is traditionally grounded in medical malpractice and not as landowner liability.

Furthermore, even under the CPLA, assuming (as Plaintiffs do) that inmates in a jail would qualify as invitees, Plaintiffs have failed to plead facts which, if true, demonstrate that Douglas County "unreasonab[ly] failed to exercise reasonable care to protect against dangers of which [the County] knew or should have known."  C.R.S. § 13-21-115(3)(c)(I).  Plaintiffs' allegations of wrongdoing focus almost exclusively on the acts and omissions of Southwest employees.  Plaintiffs' allegations concerning Douglas County relate to typical contract provisions allocating responsibility for costs among contracting parties made long before Mr. Hartwell was incarcerated.  Such allegations, even if true, do not establish that Douglas County somehow knew or should have known that Southwest posed a "danger" to Mr. Hartwell or to inmates in the Douglas County jail generally.  As such, Plaintiffs' CPLA claim should be dismissed.

---

[2]  If the Court were to conclude that Plaintiffs have stated a claim under the Premises Liability Act, the remainder of the Plaintiffs' state law claims must be dismissed as preempted. "Because the PLA established 'a comprehensive and exclusive specification of the duties landowners owe to those injured on their property,' it preempts common law tort claims against landowners by specifying the duties owed to particular classes of injured plaintiffs." *Tancrede v. Freund*, 2017 COA 36, ¶ 9; *see also Carson v. Corrections Corp. of Am.*, No. 10-cv-01329-REB-BNB, 2011 WL 1656509, at *1 (D. Colo. May 3, 2011) ("plaintiff's remedy for any negligence of defendant in causing his injuries lies exclusively under the premises liability statute").

### B. Plaintiffs Have Not Stated A Claim For A Common Law Negligence Claim Against Douglas County.

Plaintiffs' Eighth Claim for Relief purports to assert a common law negligence claim against the County and Southwest. (Compl. ¶¶ 120-125.) Paragraphs 121 and 122 contain a litany of allegedly negligent acts concerning the provision of medical care to Mr. Hartwell. However, Douglas County did not provide the medical care or the training and supervising of the medical care providers purportedly rendered in a negligent manner. Recognizing that the County did not provide the medical services and medical training and supervision they claim to have been negligent, Plaintiffs' Complaint alleges that the County Defendants had a non-delegable duty to provide such services and should be liable notwithstanding their lack of involvement. In support of this assertion, Plaintiffs cite C.R.S. § 16-3-401, which statutorily establishes a right, on the part of inmates, to receive adequate medical care but does not impose a non-delegable duty on counties to provide such care, and various decisions finding that a governmental entity's *constitutional* obligation to provide medical care was non-delegable in those cases. Those cases do not establish that governmental entities may be held vicariously liable for the alleged negligence of third-party medical providers under a theory of common law negligence.

### C. Plaintiffs Have Not Pled A Common Law Claim For Conspiracy.

"Conspiracy requires '(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Semler v. Hellerstein*, 2016 COA 143, ¶ 28 (citation omitted). Civil conspiracy is a derivative claim that is not actionable in and of itself. *Double Oak Constr,, LLC v. Cornerstone Dev. Intern'l, L.L.C.*, 97 P.3d 140, 146 (Colo. Ct. App. 2003). "If the acts alleged to constitute the

underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.*

Plaintiffs' Complaint has not pled facts establishing a conspiracy. Critically, the Complaint is devoid of allegations which, if true, would establish a meeting of the minds. Plaintiffs claim that the purported object of the conspiracy was an agreement to deprive inmates of necessary medications and medical treatment for serious medical needs. (Compl. ¶ 127.) Plaintiffs allege that the Defendants "conspired" to withhold treatment from Mr. Hartwell because Douglas County and Southwest entered into a contract long before Mr. Hartwell was incarcerated, pursuant to which Southwest provides the medical services in the jail, which included certain provisions allocating the costs of various services among the parties. (*Id.*) There are no allegations that the County and Southwest even discussed, let alone agreed, that *any* necessary medications or treatment be withheld from *any* inmates under *any* circumstances. Furthermore, for the reasons set forth in this Motion, Plaintiffs have not pled any unlawful overt act or underlying wrong purportedly committed by the Douglas Defendants in furtherance of any claimed conspiracy. Accordingly, Plaintiffs' Ninth Claim for Relief should be dismissed.

### D.     Ms. Hartwell Cannot State A Claim For Loss Of Consortium.

Plaintiffs' Tenth Claim for Relief, a claim for loss of consortium by Ms. Hartwell, is derivative of Mr. Hartwell's claims. *See Colo. Compensation Ins. Auth. v. Jorgensen*, 992 P.2d 1156, 1164 (Colo. 2000) ("Loss of consortium is a derivative claim. Derivative claims are unique in that they depend entirely upon the right of the injured person to recover.") (internal citations omitted); *Lee v. Colo. Dep't of Health*, 718 P.2d 221, 230 (Colo. 1986) (claim for loss of consortium is derivative personal injury claim of other spouse); *Pioneer Constr. Co. v.*

*Bergeron*, 462 P.2d 589, 592 (Colo. 1969) ("the action for collateral damages is derivative in nature and dependent upon the right of the injured spouse to recover"). For the reasons set forth above, Mr. Hartwell has failed to state a claim against the Douglas Defendants and, therefore, Ms. Hartwell's loss of consortium claim fails as matter of law.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiffs have failed to state a viable claim against the County Defendants, and the claims in the Complaint directed against the County Defendants should be dismissed as a matter of law pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted this 22nd day of November, 2017,

OFFICE OF THE COUNTY ATTORNEY,
COUNTY OF DOUGLAS, COLORADO

   s/ *Sean Kelly Dunnaway*
Sean Kelly Dunnaway
Dawn L. Johnson
Douglas County Deputy County Attorney
100 Third Street
Castle Rock, CO  80104
Telephone:  303-660-7414
FAX:  303-484-0399
E-mail:  kdunnawa@douglas.co.us
       djohnson@douglas.co.us

*Attorney for Defendants Tony Spurlock, Kevin Duffy and Douglas County, Colorado*

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that on this 22nd day of November, 2017, I electronically filed the foregoing **DOUGLAS DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Galen Trine McMahan, #47879
Metier Law Firm LLC
4828 South College Avenue
Fort Collins, CO 80525
Phone: 970-377-3800
Fax: 866-377-3800
Email: galen@metierlaw.com

Cheryl Trine, #38150
Trine Law Firm LLC
155 E. Boardwalk Drive #400
Fort Collins, CO 80525
Phone: 970-391-9442
Fax: 970-458-1800
Email: ctrine@trinelaw.net

                s/ *Cindy L. Hancock*

*Pursuant to USDC ECF Procedure Version 6, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*