**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-02278-RBJ

KEVIN HARTWELL,
BARBARA HARTWELL,

      Plaintiffs,
v.

SOUTHWEST CORRECTIONAL MEDICAL GROUP, PLLC,
DOUGLAS COUNTY,
SHERIFF TONY SPURLOCK, in his individual and official capacity,
CAPTAIN KEVIN DUFFY, in his individual and official capacity,
TIMOTHY G. MOSER, MD, in his individual and official capacity,
KATHRYN DAVIDSON, LPN, in her individual and official capacity,
SOPHIA NOX, LPN, in her individual and official capacity,
DAISHA WADE, LPN, in her individual and official capacity,
STEPHANIE RUSSAK, RN, CHARGE NURSE, in her individual and official capacity,
JESSICA ISAACS, RN, in her individual and official capacity,
DEIMYS VIGIL, RN, in her individual and official capacity,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DOUGLAS DEFENDANTS' MOTION TO DISMISS**

---

      Plaintiffs, by and through their counsel, Galen Trine of Metier Law Firm and Cheryl Trine of Trine Law Firm hereby Respond To Douglas Defendants' Motion To Dismiss:

**INTRODUCTION**

      This is a civil case for personal injuries and damages suffered by Kevin and Barbara Hartwell when the Douglas County Jail and Southwest Correctional Medical Group (SCMG) denied him medical care by a qualified medical provider for his seizure disorder, diabetes mellitus, and severe hypertension. Mr. Hartwell was incarcerated at the Douglas County Jail from November 10, 2016 through November 30, 2016 when he was taken by ambulance to the hospital. The Defendants knew of Mr. Hartwell's serious medical conditions including his

1

seizure disorder. The Defendants knew that Mr. Hartwell needed medications and medical care, but purposefully refused to provide them or transfer him to a higher level of care despite the obvious substantial risk of brain damage or death, even as he suffered seizures early on in his incarceration, and even as he entered status epilepticus in his cell. Both Douglas County and SCMG employees stood by and watched for over six hours but did nothing until Mr. Hartwell was nonresponsive, in respiratory and kidney failure, and had suffered a stroke and irreversible brain damage.

Ten days after Mr. Hartwell was set to the ER, his attorney sent a letter to the County Defendants requesting preservation of all 20 days of video of Mr. Hartwell. At that time, the County stated the footage was on a 90-day rolling deletion policy. A barrage of letters followed, including a CORA request for the same footage, asking to confirm it had been preserved and stating it was essential, not only to probable litigation, but also for treating physicians. Initially, Defendants produced several highly edited video clips lasting a few minutes that revealed Mr. Hartwell appearing to be fine. Footage of him in his cell or in medical suffering seizures was not disclosed. Ultimately, part of day 19-20 of Mr. Hartwell in his cell suffering unrelenting seizures was disclosed, but the rest of the video footage, including video of him in his cell and in medical suffering seizures as noted in medical records was deleted.

Plaintiffs' counsel Galen Trine communicated with Captain Duffy about the video. All jails and prisons operate under a chain of command, with the sheriff or warden at the top. It could be inferred that Sheriff Spurlock and/or Captain Duffy communicated with each other and other County employees and/or conspired with SCMG employees to withhold medical records from the hospital and/or delete video footage to avoid being held accountable, which violated Mr. Hartwell's Fourteenth and Eighth Amendment right to necessary medical treatment, and his Fifth and Fourteenth Amendment right to legal redress through the court.

In pleading municipal liability, Plaintiffs alleged an unconstitutional policy could be inferred from the systemic deficiencies alleged in Plaintiffs' complaint. The County Defendants have a non-delegable duty to provide medical care and treatment. They did not dispute Plaintiffs' allegations of constitutional violations by SCMG, or the municipal liability of SCMG, for which the County is liable pursuant to its non-delegable duty. Furthermore, the County is a landowner under the Premises Liability Act (PLA), and Plaintiffs alleged it knew or should have known of the systemic deficiencies and contractual incentives to deny inmates medications that caused the injuries to Mr. Hartwell, who was an invitee under the PLA. In the alternative, Plaintiffs' also pled a claim of negligence pursuant to the County's non-delegable duty to provide medical care. Finally, Plaintiffs pled a state law claim of civil conspiracy based on the same factual allegations as the Section 1983 conspiracy claim.

The Defendants' motion should be denied, or the Plaintiffs request leave to amend their complaint to more specifically state their claims if it is found to be deficient. If this motion is converted into a motion for summary judgment, the Plaintiffs request a decision be deferred pending discovery pursuant to Rule 56(f). ***Comm. for First Amendment v. Campbell***, 962 F.2d 1517, 1521–22 (10th Cir. 1992). An affidavit in support is attached herein as **Exhibit 1**.

## ARGUMENT

### A. Legal Standard

All factual allegations pled in a complaint are accepted as true and are construed in the light most favorable to the plaintiff. ***Coosewoon v. Meridian Oil Co***., 25 F. 3d 920, 924 (10th Cir. 1994). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." ***Bell Atl. Corp v. Twombly***, 550 U.S. 544, 555-556 (2007). Stating a claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.

3

Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading state; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely. *Id.*.

### B. Plaintiff's Claim of Municipal Liability Should Not Be Dismissed

A county may be directly liable for its unconstitutional policies, or indirectly liable for unconstitutional policies of contracted medical providers through the non-delegable duty doctrine. Colorado law provides that sheriffs have the "authority and responsibility to oversee county jails." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016). Some courts have considered a sheriff's acts as representative of official policy because a sheriff typically assumes the role of the "final policymaker" in charge of the operations of a county jail. *Id.* In the Present Case, Defendant Sheriff Spurlock is the official policy maker for the County.

Plaintiffs asserted that Douglas County had a non-delegable duty to provide detainees including Mr. Hartwell with necessary medical care and treatment from qualified medical providers that meets a community standard of care. (Complaint ¶ 11). "Regarding medical care specifically, a county can be liable indirectly through the non-delegable duty doctrine." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d at 1231. The state's duty to provide adequate medical care is non-delegable. *Id*. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). Simply put, "if a local government delegates final policy-making authority to a particular employee, any custom or policy created by that employee is the custom or policy of the local government as well." *McGill v. Corr. Healthcare Companies,*

4

*Inc.,* No. 13-CV-01080-RBJ-BNB, 2014 WL 5423271, at *7 (D. Colo. Oct. 24, 2014).

Plaintiffs alleged a pattern of unconstitutional conduct, including the deliberate failure of:

- Dr. Moser to evaluate Mr. Hartwell, create a comprehensive management plan and provide treatment (despite a policy requiring such for chronic care patients) for his known serious chronic conditions of seizures, diabetes, and hypertension that were wildly uncontrolled and which posed an obvious substantial risk of serious harm, or to send him to a higher level of care for management and treatment (Complaint ¶¶ 19-21, 23-27, 29-30, 37-40), and to follow jail standards (Complaint ¶ 31, 33);

- Nurses to fulfill their gatekeeper roles by purposefully failing to contact a physician or send Mr. Hartwell to a higher level of care for life-threatening swings in blood sugar, blood pressure, symptoms of myocardial infarction, and seizures (Complaint at ¶¶ 22-24, 28, 31-36, 39, 41-42);

- Nurses to follow policies and standards and doctor's orders (Complaint at ¶¶ 31-33, 38-39, 31-42, 46, 49). In addition, Plaintiffs alleged:

SCMG and/or Douglas County ("Defendants") ordered or acquiesced in allowing nurses, including but not limited to Isaacs to perform a constitutionally deficient initial health assessment of Mr. Hartwell that, *inter alia*, failed to determine which seizure medications Mr. Hartwell was supposed to be taking for his noted seizure disorder, which poses an obvious substantial risk of serious harm or death, and noted he had no significant medical issues despite uncontrolled diabetes, hypertension, and seizures, which pose a substantial risk of serious harm or death. She then failed to contact a physician as required. Either Nurse Isaacs did not receive the appropriate training, supervision, and/or oversight, or there was an unconstitutional policy or custom requiring and/or acquiescing in allowing nurses to conduct constitutionally-inadequate intake examinations that lead to the denial of necessary medical treatment for serious medical needs. In addition, Defendants had a policy or custom of routinely denying detainees, including Mr. Hartwell access to medical treatment by a qualified medical provider, having nurses practice outside the scope of their licenses by failing to fulfill their gatekeeper roles, and denying detainees necessary and life-saving medications as described *Supra*. Defendants purposefully failed to adequately staff and/or train and/or supervise staff to provide detainees including Mr. Hartwell with access to medical treatment by a qualified medical provider, all of which was the moving force in causing Mr. Hartwell's injuries and damages.

(Complaint at ¶ 83).

Moreover, Plaintiffs alleged written policies were not implemented or enforced including a policy establishing a chronic care program for inmates such as Mr. Hartwell. (Complaint ¶ 87). Plaintiffs alleged that Douglas County knew that SCMG was not fulfilling these written policies and implicitly or explicitly approved. (Complaint at ¶ 88). In addition, Plaintiffs alleged the Defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied an unconstitutional policy or custom of denying detainees, including Mr. Hartwell access to medical care and treatment by a qualified medical provider for serious medical needs, and that access to medical care for serious medical needs constitutes a usual and recurring situation with which officers and medical staff must deal, and for which it is necessary they receive training, supervision, and oversight. (Complaint at ¶ 92-93). It could be inferred from the description in Plaintiffs' complaint of the systemic and gross deficiencies in medical treatment for Mr. Hartwell that there were systemic deficiencies in medical care due to inadequate training, discipline and supervision due to the deliberate indifference of the County and SCMG Defendants. (Complaint at ¶ 94). Finally, Plaintiffs asserted that these unconstitutional policies and practices were the moving force behind the constitutional violations. (Complaint at ¶ 97).

Defendants are not asserting that Plaintiffs failed to sufficiently plead the violation of Mr. Hartwell's constitutional rights by medical personnel, or that Plaintiffs failed to sufficiently plead a municipal liability claim against SCMG, which the Plaintiffs have attributed to the County via the non-delegable duty doctrine. Instead, the County Defendants argue that Mr. Hartwell must plead factual allegations pertaining to other detainees being routinely denied medical treatment. (Motion at p. 5). In so arguing, the Defendants ignore the non-delegable duty doctrine and instead rely on a police shooting case in which the Supreme Court granted certiorari

to decide whether a <u>single incident</u> of unconstitutional activity <u>by a police officer</u> could suffice to establish municipal liability. ***City of Oklahoma City v. Tuttle***, 471 U.S. 808, 814 (1985).

In the Present Case, Plaintiffs have alleged many incidents of unconstitutional activity with regards to Mr. Hartwell, which evidence systemic deficiencies from which an unconstitutional policy can be inferred. ***Carmody v. Ensminger***, 2017 WL 4150601, at *5 (D. Colo. Sept. 19, 2017) (an official policy or custom may be inferred from a complaint's allegations "where a 'systemic pattern' suggests a 'policy' in some form was the motivating force." Deliberate indifference may be shown "by proving repeated examples of negligent acts which disclose a pattern of conduct" or by showing "systemic or gross deficiencies in staffing, facilities, equipment or procedures." ***Ramos v. Lamm***, 639 F.2d 559, 575 (10th Cir. 1980). *See also* ***Todaro v. Ward***, 565 F.2d 52 (2nd Cir. 1977) ("systemic deficiencies in staffing, facilities, or procedures [that] make unnecessary suffering inevitable" constitute deliberate indifference).

Finally, Plaintiffs alleged that the County entered into a contract with SCMG that created an unconstitutional policy whereby SCMG was required to pay for medications and emergency transfers, which Plaintiffs assert made risk of the systemic denial of medications and emergency transfers to inmates, including Mr. Hartwell foreseeable to Sheriff Spurlock as the official policy maker for the County, and thus the County knew of the risk but purposefully ignored it by entering into such a contract. (Complaint at ¶ 89-90). When a sheriff makes a decision as the final policymaker for the county that causes the violation of a person's civil rights, then the sheriff's decision is the moving force that creates liability for the county. ***Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs***, 151 F.3d 1313, 1319 (10th Cir. 1998). Regardless of whether Plaintiffs will ultimately be able to prove that this contract caused the violation of Mr. Hartwell's constitutional rights, this is not the only basis for the Plaintiff's claim of municipal liability against the County Defendants. Plaintiffs stated a claim sufficient to survive a motion to dismiss.

### C. Plaintiffs' Claim of Conspiracy Pursuant to Section 1983 To Withhold and/or Destroy Evidence Should Not Be Dismissed.

A § 1983 conspiracy claim is a conspiracy "to deprive a plaintiff of a constitutional or federally protected right under color of state law." ***Dixon v. the City of Lawton, Okl.***, 898 F.2d 1443, 1449 (10th Cir. 1990). A § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law. *Id*. In ***Dixon***, the Plaintiff claimed the individual defendants conspired to cover up a constitutional violation by tampering with evidence. *Id*. at 1446. The ***Dixon*** Court joined those courts which recognize a § 1983 conspiracy: ***Landrigan v. City of Warwick***, 628 F.2d 736, 742–43 (1st Cir.1980); ***Kaplan v. Clear Lake City Water Auth.***, 794 F.2d 1059, 1065 (5th Cir.1986); ***Farrar v. Cain***, 756 F.2d 1148, 1151 (5th Cir.1985); ***Dooley v. Reiss***, 736 F.2d 1392, 1395 (9th Cir.), *cert. denied,* 469 U.S. 1038 (1984); ***Hampton v. Hanrahan***, 600 F.2d 600, 622–23 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754 (1980). A Section 1983 conspiracy to destroy evidence is clearly established in the Tenth Circuit as well as other circuits.

The constitutional right the Plaintiffs claim was violated is also well-established law. No person shall be deprived of life, liberty, or property without due process of law. ***U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25.*** The Supreme Court held long ago that the right of access to the courts is a fundamental right protected by the Constitution. ***Chambers v. Baltimore & Ohio R.R. Co.***, 207 U.S. 142, 148 (1907). The right of access to the courts is clearly established in the Tenth Circuit. ***Stump v. Gates***, 777 F. Supp. 808, 823 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993). A cause of action is a species of property protected by the Due Process Clause. ***Martinez v. California***, 444 U.S. 277, 281-82 (1980). Statutory or common law entitlement to be fully compensated through a lawsuit for one's injuries is considered a species of property for the same reason that statutory entitlement to bring such a lawsuit at all is so

considered. ***Barrett v. U.S***., 689 F.2d 324, 332-333 (2nd Cir., 1982).Deprivation of papers needed for use in a judicial proceeding constitutes denial of due process and may violate § 1983. ***Sigafus v. Brown***, 416 F.2d 105 (7th Cir. 1969). The same holds for video. Section 1983 conspiracy to distort and conceal facts interfered in the family's due process right to pursue legal claims. ***Bell v. City of Milwaukee***, 746 F.2d 1205, 1254, 1279 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Constitution guarantees plaintiffs the right of meaningful access to the courts, the denial of which is established where a party engages in prefiling actions which effectively covers-up evidence. ***Swekel v. City of River Rouge****,* 119 F.3d 1259, 1262 (6th Cir.1997), *cert. denied,* 522 U.S. 1047 (1998). Conspiracy pursuant to Section 1983 to cover up true facts surrounding a death stated a claim. ***Delew v. Wagner***, 143 F.3d 1219, 1222 (9th Cir. 1998). To dispute qualified immunity, the facts of previous decisions need not correlate exactly with those of the case at issue, as long as there is "some factual correspondence" between the two. ***Despain v. Uphoff****,* 264 F.3d 965, 979 (10th Cir. 2001). Defendants Spurlock and Duffy are not entitled to qualified immunity.

      Plaintiffs assert they sufficiently pled a Section 1983 conspiracy. Direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances. ***Fisher v. Shamburg***, 624 F.2d 156, 162 (10th Cir. 1980). "Plaintiff need not offer direct evidence. Rather, conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds." ***Merritt v. Hawk***, 153 F.Supp.2d 1216, 1225 (D. Colo. 2001) (finding an inference of a conspiracy based on a conversation followed by action). A plaintiff should include some indication as to who conspired, what they conspired about, when they conspired and how they conspired. ***Wilson v. City of Lafayette***, 2008 WL 4197742, at *10 (D. Colo. Sept. 10, 2008). However, "caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions." ***Id***. The discrete nature of a

conspiracy claim where direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances requires a somewhat more tolerant posture by the courts. *Id*. Courts are to grant plaintiffs some leeway in describing the exact details of the alleged conspiracy, as long as the facts provided are sufficient to put a defendant on notice of the bounds of the alleged conspiracy. *Id*. Generally, a conspiracy claim must show an affirmative agreement by words or conduct between two or more persons. An express agreement is not necessary, but the alleged conspirators must act in concert or "demonstrate a general conspiratorial objective." *Id*. at *11. In the Present Case, Plaintiffs alleged there was communication with Plaintiffs' counsel about preserving video evidence and the need for information to assist physicians, and then Defendants destroyed most of the evidence. An agreement could be inferred from the <u>conduct</u> between two or more persons, when Plaintiffs' counsel communicated many times with Captain Duffy and others under his chain of command about preserving evidence, Sheriff Spurlock is the top of the chain of command, and it could be inferred that the conspirators acted in concert to destroy evidence based on an agreement.

"Even if the plaintiff has no basis on which to allege that the purported conspirators communicated with each other, the plaintiff's claims can withstand a motion to dismiss if the facts alleged 'give rise to the inference that the defendants conspired.'" ***Wesley v. Don Stein Buick, Inc***., 996 F.Supp. 1299, 1307 (D.Kan. 1998). A jury could infer a conspiracy based on a conversation followed by action, and there is a sequence of events from which a reasonable jury could infer there was a meeting of the minds." *Merritt v. Hawk*, 153 F.Supp.2d at 1225.

The Plaintiffs are alleging that Defendants Spurlock and Duffy communicated with each other and with SCMG after Mr. Hartwell was sent to the hospital to decide what information to provide to the hospital and what video to preserve, and that they reached an agreement to withhold information from Mr. Hartwell's doctors despite the substantial risk of serious injury to

Mr. Hartwell. The Plaintiffs are alleging that doctors trying to treat Mr. Hartwell's emergency medical condition were purposefully denied critical medical information pertaining to onset of seizures and whether he was on seizure medications, which thwarted their efforts to provide life-saving treatment. (Complaint ¶¶ 46-49, 103). Plaintiffs are alleging that despite repeated requests from Mr. Hartwell's attorney beginning within ten days of hospitalization and while Mr. Hartwell remained hospitalized, the Defendants reached an agreement to withhold information and to destroy relevant video evidence in order to thwart Mr. Hartwell's ability to successfully bring a legal action and/or reduce the value of such action. (Complaint ¶¶ 57-60, 102).

Plaintiffs alleged that the agreement and concerted effort by Defendants to withhold and/or destroy relevant information violated Mr. Hartwell's Fourteenth and Eighth Amendment right to necessary medical treatment, and his Fifth and Fourteenth Amendment right to legal redress through the court. (Complaint ¶¶ 101-103). The SCMG Defendants did not move to dismiss the claim of conspiracy. Both Douglas County and SCMG have an incentive to withhold and destroy evidence to avoid accountability, including preventing or thwarting a lawsuit against them and/or reducing its value (Complaint ¶¶ 58-61, ¶¶ 101-103). Plaintiffs may also request a jury instruction about spoliation of evidence, but are not limited to such an instruction.

In addition, Plaintiffs alleged the County Defendants conspired with SCMG to violate Mr. Hartwell's Fourteenth and Eighth Amendment right to necessary medical care and treatment by qualified medical providers for a serious medical need, which caused him injuries and damages by purposefully and deliberately failing to adequately staff, train, and/or supervise the medical department, and by purposefully contracting in a manner that foreseeably incentivized the denial of necessary medical treatment for serious medical needs. (Complaint ¶ 101). Plaintiffs alleged the County Defendants entered into an explicit agreement with SCMG that would result in the denial of necessary medical care to inmates, including Mr. Hartwell.

11

(Complaint ¶ 89-90). Plaintiffs alleged the County Defendants knew that shifting the cost of medications and emergency transfers to SCMG would result in inmates being denied necessary medical treatment, and posed an obvious substantial risk of serious harm to all prisoners, including Mr. Hartwell. (Complaint ¶¶ 85, 89-91). *Farmer v. Brennan*, 511 U.S. 825, 834. 842 (1994) (a risk can be so obvious that a jury may reasonably infer actual knowledge on the part of the defendants sufficient to satisfy the subjective component). Allegations that a Grand Jury found these contractual provisions foreseeably endangered lives supports an inference that the risk was known and/or obvious to Douglas County when it entered into the contract with SCMG. (Complaint ¶ 91). *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001) (jury may infer from surrounding circumstances that defendants had been exposed to information regarding the risk); *Fruit v. Norris,* 905 F.2d 1147, 1150-51 (8th Cir. 1990) ("common sense" is relevant in deciding obviousness of risk).

If the Court finds that Plaintiffs did not plead their Section 1983 Conspiracy allegations with enough particularity, they request leave to amend the complaint to cure any alleged deficiencies. Or, if this motion is converted into a motion for summary judgment, they request a decision be deferred pending discovery pursuant to Fed.R.Civ.P. 56 (f). **Exhibit 1**.

### D. Plaintiffs' Premises Liability Claim Should Not Be Dismissed.

Defendants assert they can only be liable pursuant to the Premises Liability Act (PLA) if they are liable in their legal capacity as a landowner for the conditions, activities and circumstances on the property, citing *Larrieu v. Best Buy Stores, L.P*., 303 P.3d 558, 559 (Colo. 2013). Landowners include individuals or entities who are authorized agents or persons in possession, and include individuals or entities who are legally conducting an activity on the property or legally creating a condition on the property. *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1221 (Colo. 2002), *as modified on denial of reh'g* (July 1, 2002). Obviously,

the County and SCMG are legally in possession of the jail and legally conducting activities or creating conditions on the property. The County appears to be asserting only SCMG is liable under the PLA for denial of medical care, but they provided no authority in support, and the PLA is not limited in that manner. *Jules v. Embassy Properties, Inc*., 905 P.2d 13, *14 (Colo. App. 1995) (when a defendant admits to owning the property in question, the defendant is a "landowner" under premises liability statute even when it has delegated its legal responsibilities for the property to a property manager). Both the County and SCMG are "landowners."

Furthermore, the PLA creates a non-delegable duty. Under the PLA, landowner status confers a non-delegable duty and a landowner cannot escape liability for conditions created by negligent subcontractors. *Reid v. Berkowitz*, 370 P.3d 644, 648–49 (Colo. App. 2016). The landowner is liable for the subcontractors' actions under the PLA, but not for claims of common law negligence against other parties not subsumed within the PLA. *Id*. at 649. The non-delegable duty burdens the landowner with full liability under the PLA regardless of the fault imputable to other defendants or nonparties under the PLA, but it does not permit a court to find a landowner vicariously liable for injuries alleged under common law negligence theories. *Id*.

The County Defendants asserted liability is traditionally grounded in medical malpractice but provided no legal authority that the PLA does not apply here. The PLA applies to a personal injury action that meets four requirements: (1) the action involves the plaintiff's entry on the landowner's real property; (2) the plaintiff's injury occurred while on the landowner's real property; (3) the injury occurred by reason of the property's condition, activities conducted on the property, or circumstances existing on the property; and (4) the landowner breached the duty of care it owed the plaintiff under the premises liability statute's classification of trespasser, licensee, or invitee. *See* 13–21–115(2). *Larrieu v. Best Buy Stores, L.P*., 303 P.3d at 562. Inmates of prisons are invitees, and the same reasoning in support of that classification would

apply to inmates of jails. ***Carson v. Corrections Corp. of Am***., 2011 WL 1656509, at 1 (D. Colo. May 3, 2011). An invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known. ***Id***.

Plaintiffs alleged the County is a landowner under the statute; Mr. Hartwell's injury occurred while he was incarcerated on the landowner's real property; the injury occurred by reason of activities conducted on the property or circumstances existing on the property (the denial of medical treatment by a qualified medical provider); and that the County and SCMG breached their duty of care to Mr. Hartwell as an invitee. Plaintiffs incorporated all previous allegations regarding the denial of medical care and then alleged that Defendants knew or should have known that systemic failures to provide medications and medical care by a qualified medical provider for serious medical and potentially-life threatening needs would likely seriously harm people entrusted in its care, including Mr. Hartwell. (Complaint at ¶¶ 114-115).

### E. Plaintiffs Alleged Common Law Negligence In The Alternative

If the Court finds that the PLA applies to Douglas County, then Plaintiff's common law negligence claim against the County should be dismissed. If negligence applies, then Plaintiffs asserted the County and SCMG were liable for failing to adequately train, supervise, and/or provide oversight to nursing staff, and in failing to enact and/or implement and enforce policies, procedures, protocols, and/or guidelines that require, inter alia, adequate staffing levels including physician access and access to a qualified medical provider, and the transfer of documentation and information to the ER with an inmate. (Complaint ¶¶ 120-121).

Finally, Plaintiffs asserted Douglas County had a non-delegable duty to provide medical care within the community standard of care to detainees, including Kevin Hartwell. (Complaint ¶ 122). Plaintiff also alleged that systemic failures put all detainees and inmates at risk, and

caused Mr. Hartwell's injuries and damages. (Complaint ¶ 123). Under federal law, a jail has a non-delegable duty to provide necessary medical care to inmates. *McGill v. Correctional Healthcare Cos., Inc.*, 2014 WL 5423271, at *6-7 (D.Colo. Oct. 24, 2014).

When a principal has a non-delegable duty to protect others from the hazards of its enterprises and entrusts the performance of such duty to an agent, it is subject to liability for any harm caused by the agent's negligence. *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 454 (Colo. App. 2005). The County Defendants are liable for their own negligence and the negligence of their agent, SCMG.

**F. Plaintiffs' Civil Conspiracy Under State Law Should Not Be Dismissed**

Plaintiffs disagree that they failed to state a claim for state law civil conspiracy. (Complaint ¶¶ 126-129). Plaintiffs alleged an agreement to deny necessary medical care, which is an unlawful act or underlying wrong, and they incorporated all previous allegations by reference. They also alleged a conspiracy to cover up the unlawful denial of medical care by destroying video evidence, which is an unlawful act. However, if Plaintiffs' complaint is deficient, they request leave to amend it to more fully state allegations in support.

WHEREFORE, for all the foregoing reasons, Plaintiffs respectfully request the County Defendants' Motion be DENIED, or if Plaintiffs' complaint is deemed to be deficient, that they be allowed leave to amend to cure any deficiencies, or in the alternative, if converted to a motion for summary judgment, that ruling be deferred pending discovery pursuant to Fed.R.Civ.P. 56(f), and for such further relief as the Court finds just and equitable.

DATED this 27th day of December, 2017

Respectfully Submitted:

/s/ Galen Trine-McMahan
Galen Trine-McMahan
Metier Law Firm LLC
4828 South College Avenue
Fort Collins, CO 80525
Phone: 970-377-3800
Fax: 866-377-3800
Email: galen@metierlaw.com

/s/ Cheryl Trine
Cheryl Trine
Trine Law Firm LLC
155 E. Boardwalk Drive #400
Fort Collins, CO 80525
Phone: 970-391-9442
Fax: 970-458-1800
Email: ctrine@trinelaw.net

*For the Plaintiffs*

## **CERTIFICATE OF SERVICE**

On this 27th day of December, 2017, I filed and served the foregoing document, via CM/ECF and U.S. Mail upon the following:

Kelly Dunnaway, Esq.
Douglas County
100 Third Street
Castle Rock, CO 80104

Ann B. Smith, Esq.
Gordon L. Vaughan, Esq.
**Vaughan & DeMuro**
111 South Tejon, Suite 545
Colorado Springs, CO 80903

> */s/ Cheryl Trine*
> *Cheryl Trine*