IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02278-RBJ

KEVIN HARTWELL and
BARBARA HARTWELL,

    Plaintiffs,

v.

CORRECTIONAL MEDICAL GROUP COMPANIES INC., d/b/a SOUTHWEST CORRECTIONAL MEDICAL GROUP, LLC, d/b/a SOUTHWEST CORRECTIONAL MEDICAL GROUP PLLC, d/b/a COLORADO CORRECTIONAL MEDICAL GROUP, PLLC
DOUGLAS COUNTY,
TIMOTHY G. MOSER, MD, in his individual and official capacity,
SOPHIA NIX, LPN, in her individual and official capacity,
DAISHA WADE, LPN, in her individual and official capacity,
STEPHANIE RUSSAK, RN, CHARGE NURSE, in her individual and official capacity,
JESSICA ISAACS, RN, in her individual and official capacity,
DEIMYS VIGIL, RN, in her individual and official capacity,
LINDSEY GYGER, RN, in her individual and official capacity,
EMILY BARRON, RN, in her individual and official capacity,
KATHRYN DAVIDSON, LPN, in her individual and official capacity,
JENNIFER TRIMBLE a/k/a GLENN, RN, HSA, in her individual and official capacity,

    Defendants.

---

ORDER – MOTION TO DISMISS SECOND AMENDED COMPLAINT

---

    Defendant Douglas County moves to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The motion is granted in part and denied in part.

## BACKGROUND

Kevin Hartwell had a history of hypertension, diabetes and seizures when he was arrested and taken to the Douglas County Jail on November 10, 2016. He alleges that during the 20 days he remained in the jail medical personnel did not provide medications and dosages prescribed by his primary care physician, and that he experienced dangerous elevations in blood sugar and blood pressure, seizure, and ultimately, a serious disorder called status epilepticus. Finally, Mr. Hartwell was transported to a hospital, but plaintiff alleges that this came too late to avoid permanent brain damage and other consequences.

Douglas County contracted with the Correctional Medical Group Companies, Inc. ("CMGC") to provide medical care for inmates in its jail.[1] On September 20, 2017 Mr. and Mrs. Hartwell filed the present case against CMGC, Douglas County and several of their respective employees or agents on various constitutional and state law theories. Complaint, ECF No. 1. The Douglas County defendants moved to dismiss. ECF No. 21. That motion was briefed but became moot upon the filing of plaintiffs' First Amended Complaint.

The Douglas County defendants again moved to dismiss. ECF No. 78. Following briefing, I issued an order granting the motion in part and denying it in part. ECF No. 109. I noted that the Douglas County defendants do not practice medicine, and that CMGC would have to answer for any failure of its obligation to provide adequate medical care. However, I also held that Douglas County's ultimate constitutional duty to provide adequate medical care to the inmates in its jail was non-delegable, meaning that if CMGC were found liable, Douglas County

---

[1] "CMGC" refers to Correctional Medical Group Companies, Inc., d/b/a Southwest Correctional Medical Group, LLC, d/b/a Southwest Correctional Medical Group PLLC, d/b/a Colorado Correctional Medical Group, PLLC, as identified in the Second Amended Complaint.

would also be liable. *Id.* at 2. I found that this was not a *Monell* issue, and that the First Amended Complaint did not in any event allege facts sufficient to make out a plausible claim under a *Monell* theory.[2] Further, while noting that plaintiffs had accused the Sheriff and his staff of spoliation of evidence, that was an evidentiary issue, not the basis for a *Monell* claim unless the plaintiffs could allege facts (which they had not done) plausibly indicating a custom, practice or policy of destruction of evidence. *Id.*

Douglas County then moved for an order certifying an interlocutory appeal on the non-delegable duty theory, specifically, "whether a municipality can be held liable under § 1983 for an alleged failure of its contracted medical provider to render adequate medical treatment to a pretrial detainee based solely on a theory of non-delegable duty." ECF No. 110 at 3-4. I denied that motion. ECF No. 126.

Plaintiffs moved for leave to file a Second Amended Complaint to "reassert a *Monell* claim for ratification against the County with additional facts learned during discovery," to join additional nurse defendants, and to delete or modify certain claims. *See* ECF No. 143. The motion was granted. The Second Amended Complaint, ECF No. 161, is now the operative complaint in the case. Douglas County has once again filed a motion to dismiss. ECF No. 162. It has been fully briefed, and I address this motion in this order.

## ANALYSIS AND CONCLUSIONS

Douglas County argues that plaintiffs still have not alleged facts that plausibly would support a claim on a municipal liability theory. ECF No. 162 at 1-2. I agree.

---

[2] *Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978).

To establish § 1983 liability on a municipality for the acts of its employees, plaintiffs must "identify 'a government's policy or custom' that caused the injury." *Schneider v. City of Grand Junction Police Department,* 717 F.3d 760, 769 (10th Cir. 2013) (citing and quoting *Monell,* 468 U.S. at 694). A plaintiff must also show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* (citing *Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997)).

Because I previously held that plaintiffs had failed to state a claim against the Douglas County defendants on a *Monell* theory, I will look now to the relevant allegations that have been added to see whether they make a difference. Based on my review of the red-lined version of the Second Amended Complaint, the relevant new "facts" appear to be the italicized portions in the following paragraphs:

> 22. *At least two inmates before Hartwell were denied medications by CMGC until they entered status epilepticus or continuous seizures, a life-threatening emergency.*
>
> 23. *In July of 2016, inmate Benjamin Ramsey was denied medications including medications for seizures at the jail until he went into status epilepticus.*
>
> 24. Four months later, Kevin Hartwell was denied medications for seizures at the jail until he went into status epilepticus for over seven hours before EMS was contacted.
>
> . . .
>
> 166. Douglas County through its final policy maker Sheriff Spurlock and/or Captain Duffy, delegated final policy making authority for medical care at the jail to CMGC. Douglas County did not formulate any policies, procedures, or protocols for medical care, and it deferred all decisions pertaining to medical care to CMGC. Even during medical emergencies, Detentions staff contacted nurses rather than contact 911. Douglas County is liable for the unconstitutional policies and customs of CMGC at the Douglas County Jail in 2016.
>
> 167. In addition, the County knew CMGC's policies and customs were substantially certain to violate inmates' constitutional rights before Hartwell was injured, but was deliberately indifferent to the risk. *After patient Ramsey was transferred to the ER on July 21, 2016, suffering from prolonged status epilepticus as a result of being denied*

4

*his seizure medications, Douglas County through Sheriff Spurlock and/or those to whom he delegated authority, interviewed the nurses involved including Gyger and Vigil, knew of the unconstitutional policies and customs of CMGC that injured Ramsey, and knew that these unconstitutional policies and customs were not changed.*

168. At all times material, CMGC purposefully maintained an unconstitutional policy, practice, or custom including, among other things, the following:

    a. Requiring LPNs to work outside the scope of their license;

    b. Allowing nurses to routinely fail to fulfill their gatekeeper roles by failing to contact a physician or send inmates to the ER;

    c. Purposefully cutting inmates off prescribed medications;

    d. Being understaffed during November of 2016, with no mid-level provider;

    e. Prohibiting Dr. Moser from personally evaluating inmates other than for pre-scheduled appointments six hours per week;

    f. Requiring nurses, including LPNs to contact the HSA to determine if a seizure is "real" prior to contacting EMS;

    g. Requiring nurses to call Dr. Moser prior to contacting EMS;

    h. Directing or allowing nurses to chart that medications were provided per protocol without contacting a doctor and without entering any order for the medications or administering them to the patient;

    i. Directing or allowing nurses to make woefully inadequate and/or inaccurate chart notes, fail to perform nursing assessments, fail to follow nursing protocols for seizures and emergencies, fail to fulfill gatekeeper roles, and decide if inmates were faking serious illness;

    j. Directing or allowing Dr. Moser to rely on assessments by LPNs over the phone to decide treatment, and then direct LPNs to monitor patients rather than call 911;

    k. Refusing to investigate, correct, train, and reprimand unconstitutional behaviors, customs, and policies that resulted in serious harm to inmates including Ramsey and Hartwell, including the failure to provide any additional training on acute neurologic changes, seizures, nursing protocols, the scope of practice of a LPN, and when to contact 911. No changes were made to prevent future injuries.

169. There are systemic and widespread deficiencies by multiple providers in the medical care and treatment by CMGC at the Douglas County Jail, beginning with prisoners before Hartwell including Ben Ramsey, which reflect an official policy or custom of deliberate indifference to serious medical needs, and which was the cause moving force behind Kevin Hartwell's injuries. The deficiencies were so widespread

and ubiquitous as to affect all inmates with serious medical needs at the Douglas County Jail. The need for training, supervision, and adequate staffing of the medical department to avoid the risk of serious injury and death from life threatening illness, including but not limited to seizures, diabetes, and severe hypertension was obvious. CMGC purposefully failed to adequately staff and/or train and/or supervise staff to provide detainees including Mr. Hartwell with access to medical treatment by a qualified medical provider for serious medical needs that posed a substantial risk of serious harm, all of which was the moving force in causing Mr. Hartwell's injuries and damages.

170. Douglas County had a non-delegable duty to provide detainees including Mr. Hartwell with necessary medical care and treatment from qualified medical providers that meets a community standard of care. To the extent Douglas County delegated authority to make official policy, custom, or final decisions to CMGC, either expressly or by default, the policies and customs of CMGC become the policies and customs of the county, and the county is liable for their actions if the policy proves unconstitutional.

171. There was a direct causal link between the constitutional deprivations as aforesaid, and the inadequate training, inadequate discipline and inadequate supervision, and/or unconstitutional policies or customs of the Defendants.

172. Each Defendant's conduct was a direct cause in whole or in part of Plaintiff's injuries and damages, which are indivisible, resulting in joint and several liability.

173. The Defendants' unconstitutional conduct caused Plaintiff's injuries and damages as set forth in 131, *Supra* in an amount to be proved at the time of trial.

ECF No. 161 at 4, 24-27 (emphasis added).

Construing the allegations liberally, the new "facts" are that (1) there were two inmates in the jail before Mr. Hartwell who were denied medications and went into status epilepticus; (2) one of those inmates, Ben Ramsey, was hospitalized on July 31, 2016; (3*)* following the Ramsey incident Douglas County personnel interviewed the involved nurses including Nurses Gyger and Vigil who are named defendants in the present suit. Based on those facts plaintiff asserts that Douglas County therefore knew of the unconstitutional policies and customs of CMGC that injured Ramsey, and knew that these unconstitutional policies and customs were not changed.

6

In my view the new "facts" do not support a finding that Douglas County had a custom, policy or practice of permitting or ignoring CMGC's treatment of inmates with seizures, much less that the policy or practice was maintained with deliberate indifference to an almost inevitable constitutional injury. Paragraph 22 tells us nothing about the date or circumstances involved in the alleged incident before the Ramsey incident. Assuming the truth of the sparse allegation concerning inmate Ramsey, that took place approximately four months before Mr. Hartwell's incarceration, plaintiffs allege in paragraph 167 that Douglas County did interview the involved nurses. Plaintiffs have not asserted that Douglas County determined that medical negligence had occurred, or that if so, that Douglas County ignored the determination. The assertion that Douglas County thereby knew of unconstitutional policies and customs of CMGC, and that Douglas County nevertheless permitted the policies and customs to continue without modification is not a reasonable inference from the facts alleged. Rather, it amounts to a conclusory allegation that the Court need not and does not construe in plaintiffs' favor.

In context, the new allegations reinforce plaintiffs' allegation that CMGC personnel failed to provide adequate care to Mr. Hartwell. I stand by my previous holding that because Douglas County has a duty to provide adequate medical care to inmates in its jail, it is liable if the private party with whom it contracted to provide the care fails to do so. An inmate has no ability to provide medical care for himself. If a jail's duty to provide adequate medical care ends when it hires a private medical provider, then where does that leave an inmate who gets lousy care if he cannot collect damages against the contractor? Municipalities presumably can take steps to protect themselves such as by careful screening of provider companies, indemnification clauses and insurance, but the duty to provide the care remains. Plaintiffs insist that Douglas

County is also liable based on its own customs, practices or policies, apparently a "belt and suspenders" approach. I find that plaintiffs have not plausibly alleged facts that could support that alternative theory of liability.

## ORDER

Douglas County's motion to dismiss, ECF No. 162, is GRANTED IN PART AND DENIED IN PART. It is granted insofar as plaintiffs are attempting to assert liability based upon a *Monell* theory (municipal custom, practice or policy). It is denied insofar as plaintiffs rely on the County's (the Sheriff's) ultimate and non-delegable duty to provide adequate medical care to him while he was incarcerated in the Douglas County jail.

DATED this 1st day of July, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge